IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Proformance Manufacturing, Inc. ) | Civil Action No. 14cv535 |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| v. ) | |
| ) | <u>**JURY TRIAL DEMANDED**</u> |
| James Hardie Industries SE and James ) | |
| Hardie Technology Limited, ) | |
| ) | |
| Defendants ) | |
| ) | |

Plaintiff Proformance Manufacturing, Inc., by its undersigned attorneys, demands a trial by jury of all claims and issues so triable, and, as for its Complaint against Defendants James Hardie Industries SE and James Hardie Technology Limited, Proformance Manufacturing, Inc., hereby alleges the following:

<u>**NATURE OF ACTION**</u>

1.      This is a civil action for correction of inventorship of three U.S. patents under 35 U.S.C. § 256, Fraudulent Non-Disclosure, Conversion, and Unjust Enrichment.

<u>**THE PARTIES**</u>

2.      Plaintiff, Proformance Manufacturing Inc., ("PMI") is a corporation organized and existing under the laws of the State of Wisconsin, having its principal place of business at 750 N. County Road, Lone Rock, WI 53556.

3.      Defendants, James Hardie Industries SE and James Hardie Technology Limited (collectively "Hardie" or "Defendants"), are corporations having their principal place of business at Second Floor, Europe House, Harcourt Centre, Harcourt Street, Dublin 2, Ireland.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as a civil action arising under the Constitution, laws, or treatises of the United States. This Court has subject matter jurisdiction under 35 U.S.C. § 1338, because this action arises under an Act of Congress relating to patents (35 U.S.C. §§ 1, et seq.). This Court also has supplemental jurisdiction of Counts III, IV and V pursuant to 28 U.S.C. § 1367, because those claims are so related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy.

5.       Venue is proper in this judicial district pursuant to the provisions of 28 U.S.C. §§ 1391(b) and (c).

6.      Hardie claims to be the assignee of the identified patents, and holds the power to request that the inventorship on these patents be corrected pursuant to 35 U.S.C. § 256.  Hardie does business in the State of Wisconsin including maintaining a divisional business unit in this District.  Hardie attended several meetings in this District concerning the acts described below, including meetings on November 4, 10, and 16, 2011 and at least one other in 2012. For example, at the meeting in this District on November 16, 2011, Hardie signed a Non-Disclosure Agreement with PMI concerning a potential business agreement with Hardie, PMI and Teel Plastics Inc. ("Teel") related to the new window technology described below. On or about April 3, 2012, Hardie acquired certain assets in this District from Teel, including the pultrusion division of Teel described below. Upon information and belief, Hardie has permitted and encouraged its subsidiary, Razor Composites, LLC ("Razor"), to use those certain assets in this District. Razor resides in this District with a principal place of business at 1315 Lake Street, Baraboo, WI 53913.

7.      This Court has personal jurisdiction over Defendants.

**FACTUAL BACKGROUND**

8.      PMI's claims are based on Defendants' misrepresentation to the U.S. Patent and Trademark Office ("USPTO") and the public that Brian A. Emanuel ("Emanuel") was the sole inventor of unique and valuable technology related to window frames described and claimed in U.S. Patent No. 8,511,011 entitled Structural Frame Member Having a Capped Corner Key Passage ("the '011 Patent") (Ex. A); U.S. Patent No. 8,596,017 entitled Structural Frame Member, Corner Key and Assembly Method ("the '017 Patent") (Ex. B); and U.S. Patent No. 8,683,694 entitled Method of Forming a Frame Assembly ("the '694 Patent") (Ex. C).  However, Defendants were aware that Gerald D. Beranek ("Beranek") of PMI solely invented the '017 and '694 Patented technology and that Beranek and Emanuel were co-inventors on the '011 Patented technology.

9.      Beranek has worked in the glass and window industry for more than 30 years. He has held positions including supervisor, sales manager, plant manager and special projects manager. His responsibilities included research and development projects related to glass and window technology.

10.      Beranek founded PMI in 2002 and began fabricating vinyl windows.

11.      Beranek began researching alternate materials for window components including fiberglass, which is stronger than vinyl. Using fiberglass for window components, however, included several challenges including the inability to weld the window-frame corners.

12.      Beranek originated and developed a new fiberglass window technology having, among other things, a unique corner-key cavity to join the window-frame corners.

13.     On or about October 4, 2010, Beranek contacted the pultrusion division of Teel to assist PMI and Beranek with the manufacturing of certain components of the new window technology, such as frame and sash lineals. As part of the manufacturing process, Teel assisted Beranek in fabricating a set of pultrusion dies that would be used to manufacture PMI's exclusive and proprietary window system.

14.     Teel agreed that the new window technology and associated intellectual property would be owned exclusively by PMI.

15.     Teel assigned Emanuel to work on the project with PMI.  Emanuel understood that PMI would own the new window technology and any intellectual property associated with the design.

16.     As part of their work for Beranek and PMI, Teel and Emanuel created drawings of Beranek's new window technology for the pultrusion manufacturing process. All drawings created by Teel and Emanuel included title blocks with PMI logos and state "PMI Engineering."

17.     PMI and Beranek initiated the efforts to obtain patent protection on their new window technology.  PMI hired its patent counsel to draft provisional patent applications.

18.     PMI, through its patent counsel, filed U.S. Provisional Application 61/555,384 on November 3, 2011 and Provisional Application 61/558,919 on November 11, 2011 (collectively "Provisional Applications").  Beranek and Emanuel were both identified as inventors of the U.S. Provisional Applications.

19.     On November 3, 2011, PMI and Teel entered into a Confidentiality Agreement under which discoveries and inventions would be owned exclusively by the originating party and joint discoveries and inventions would be jointly owned by the parties in proportion to their respective contributions.

20.     On November 4, 2011, PMI, Teel and Hardie met in this District and discussed a business agreement between all three companies whereby Hardie would purchase PMI, purchase its new technology, or license the new window technology including the Provisional Applications.

21.     On November 16, 2011, PMI and Hardie met again in this District and entered into a Mutual Non-Disclosure Agreement relative to their business discussions described above.

22.     On December 7, 2011, Beranek assigned his rights to both Provisional Applications to PMI.

23.     On December 9, 2011, Emanuel assigned his rights to both Provisional Applications to Teel.

24.     On December 14, 2011, PMI and Hardie met again.  During that meeting Hardie told PMI that they "were heading in another direction" and were no longer interested in purchasing PMI, purchasing its new window technology, or licensing its technology.

25.     At no time did Hardie inform PMI that they were secretly negotiating the purchase of Teel's pultrusion division. In addition, at no time did Hardie inform PMI that Hardie intended to file patent applications claiming ownership of PMI's new window technology. Further, at no time did Hardie inform PMI that they believed Emanuel was the sole inventor of PMI's new window technology.

26.     On January 17, 2012, PMI filed another provisional application 61/587,364, titled "Frame Assembly Having A Corner Key," naming only Beranek as an inventor. Beranek assigned his rights to PMI.

27.     Unknown to PMI at the time, discussions continued between Teel and Hardie without PMI. Teel's pultrusion division was ultimately sold to Hardie on or about April 1, 2012,

5

and became Razor, a division of Hardie.  Emanuel then became an employee of Razor.  Razor was and continues to be located in this District.

28.    Hardie did not purchase PMI, did not purchase the new window technology from PMI, or license the new window technology from PMI.

29.    On August 17, 2012, PMI filed Non-provisional U.S. Patent Application 13/588,758 entitled Frame Assembly Having A Corner Key.  The 13/588,758 Patent Application claims priority to PMI's 61/555,384, 61/558,919, and 61/587,364 provisional applications that were previously filed.  PMI identified Beranek as the only inventor.

30.    On August 21, 2012, PMI and Hardie met again in this District. Hardie requested and received a copy of PMI's 13/588,758 Patent Application. Again, Hardie did not inform PMI that it intended to file patent applications claiming ownership of PMI's new window technology. Hardie also did not inform PMI that they believed Emanuel was the sole inventor of PMI's new window technology.

31.    Just two weeks after the above meeting, on September 5, 2012, Hardie filed U.S. Patent Application 13/604,037, which claims inventions already claimed in PMI's Provisional Applications.  However, the 13/604,037 Application identified only Emanuel as the inventor. Hardie did not disclose the application to Beranek or PMI and did not identify Beranek as a co-inventor.

32.    On October 19, 2012, Hardie filed U.S. Patent Application 13/655,541, which claims inventions already claimed in PMI's Provisional Applications.  The 13/655,541 Application also only identified Emanuel as the inventor.  Again Hardie did not disclose to Beranek or PMI that it had filed a patent application on the new window technology and did not identify Beranek as the sole inventor.

33.     Hardie was aware that PMI had already filed patent applications and therefore requested that the USPTO expedite review of Hardie's patent applications so that PMI would not learn of Hardie's applications, to prevent PMI from obtaining its own patents, and to prevent PMI from learning that Hardie identified only Emanuel as the inventor of the new window technology.

34.     On November 2, 2012, PMI filed Non-provisional U.S. Patent Application 13/667,561 entitled Frame Members, Corner Key and Assembly Method.  The 13/667,561 Patent Application claims priority to PMI's Provisional Applications that were previously filed.  PMI identified both Beranek and Emanuel as co-inventors.

35.     On August 20, 2013, Hardie's U.S. Patent Application 13/604,037 issued as the '011 Patent.  The '011 Patent lists Emanuel as the only inventor and Hardie as the only assignee/owner.

36.     On October 10, 2013, the USPTO issued a Final Rejection of PMI's 13/667,561 Application for non-statutory double patenting due to Hardie's '011 Patent.

37.     On October 24, 2013, Hardie filed U.S. Patent Application 14/061,955 which claims inventions already claimed in PMI's Provisional Applications.  Again, Hardie only identified Emanuel as the inventor.  Hardie did not identify Beranek as the sole inventor.

38.     On December 3, 2013, Hardie Patent Application 13/655,541 issued as the '017 Patent.  The '017 Patent lists Emanuel as the only inventor and Hardie as the only assignee/owner.

39.     On January 31, 2014, the USPTO issued a Final Rejection of PMI's 13/588,758 Application rejecting all claims for non-statutory double patenting due to Hardie's '017 Patent.

40.     On April 1, 2014, Hardie's Patent Application 14/061,955 issued as the '694 Patent. The '694 Patent lists Emanuel as the only inventor and Hardie as the only assignee/owner.

41.     Hardie has filed for and obtained utility patents, and upon information and belief seeks to obtain additional patents on the new window technology originated and developed by Beranek and owned by PMI, without identifying Beranek as an inventor, and falsely claimed that the technology in the '011, '694 and '017 Patents was created solely by Emanuel which, at all relevant times hereto, Hardie knew was false.

## COUNT I
## CORRECTION OF INVENTORSHIP
## PURSUANT TO 35 U.S.C. § 256 OF THE '017 AND '694 PATENTS

42.     PMI incorporates by reference paragraphs 1-41 as if fully set forth herein.

43.     Beranek is the true and sole inventor of the claimed subject matter of the '017 and '694 Patents.  Emanuel did not invent any of the claimed subject matter of the '017 and '694 Patents.

44.     PMI is entitled to a declaration that Beranek is the true and sole inventor of the subject matter claimed in the '017 and '694 Patents and that Emanuel is not an inventor of the subject matter claimed therein.

45.     Hardie's naming of Emanuel as sole inventor and omitting Beranek was a deliberate act intended to deceive the USPTO and the public and deprive PMI of its rightful inventions.

46.     On information and belief, all parties concerned with the inventorship of the issued patents identified herein and for which correction of inventorship is sought are on notice,

and Hardie, as the assignee of the identified issued patents, holds the power to request that the inventorship on these patents be corrected pursuant to 35 U.S.C. § 256.

47.     Beranek is the sole inventor of the '017 and '694 Patents for which correction of inventorship is sought and, pursuant to 35 U.S.C. § 256, inventorship should be corrected by removing Emanuel as an inventor and identifying Beranek as the sole inventor.

48.     PMI is entitled to an order directing Hardie and the Director of the USPTO to issue a certificate correcting inventorship of the '017 and '694 Patents.

**COUNT II**
**CORRECTION OF INVENTORSHIP**
**PURSUANT TO 35 U.S.C. § 256 OF THE '011 PATENT**

49.     PMI incorporates by reference paragraphs 1-48 as if fully set forth herein.

50.     Beranek is a co-inventor of the claimed subject matter of the '011 Patent.

51.     PMI is entitled to a declaration that Beranek is a co-inventor of the '011 Patent.

52.     Hardie's naming of Emanuel as sole inventor and omitting Beranek was a deliberate act intended to deceive the USPTO, the public and investors and deprive PMI of its rightful inventions.

53.     On information and belief, all parties concerned with the inventorship of the issued patents identified herein and for which correction of inventorship is sought are on notice, and Hardie, as the assignee of the identified issued patents, holds the power to request that the inventorship on these patents be corrected pursuant to 35 U.S.C. § 256.

54.     Beranek is a co-inventor of the '011 Patent for which correction of inventorship is sought and, pursuant to 35 U.S.C. § 256, inventorship should be corrected by identifying Beranek as an inventor.

55.     PMI is entitled to an order directing Hardie and the Director of the USPTO to issue a certificate correcting inventorship of the '011 Patent.

## COUNT III
### FRAUDLENT NON-DISCLOSURE

56.     PMI incorporates by reference paragraphs 1-55 as if fully set forth herein.

57.     Because Beranek (who had assigned his inventions to PMI) was the sole inventor of the subject matter of the '017 and '694 Patents, and a co-inventor of the subject matter of the '011 Patent, Hardie had an ongoing duty to disclose to PMI the filing and prosecution of its three patent applications, and the issuance of the three patents.

58.     Hardie failed to disclose to Beranek and PMI the filing and prosecution of its three patent applications, and the issuance of the three patents.

59.     Hardie's failure to disclose the filing and prosecution of its three patent applications, and the issuance of the three patents, constituted concealment of a material fact that in law or equity should have been disclosed to PMI.

60.     Hardie was aware that its failure to disclose the filing and prosecution of its three patent applications, and the issuance of the three patents, constituted concealment of a material fact that in law or equity should have been disclosed to PMI.

61.     Hardie further concealed from PMI that it had expedited the USPTO's review of its patent applications.

62.     PMI was not aware that Hardie had filed or was prosecuting its three patent applications.  PMI was also not aware that Hardie had expedited review of its first two patent applications at the USPTO.

63.     PMI did not expedite its own patent applications.

10

64.     As a direct and foreseeable consequence of Hardie's actions, including not identifying Beranek as a co-inventor on the '011 Patent and not identifying Beranek as the sole inventor on the '017 and '694 Patents, PMI has suffered damages.

65.     PMI's reliance was justified and this reliance caused damage to PMI in an amount to be determined at trial.

**COUNT IV**
**CONVERSION**

66.     PMI incorporates by reference paragraphs 1-65 as if fully set forth herein.

67.     Beranek created proprietary new window technology that was not possessed by Hardie.  Beranek assigned the new window technology to PMI, thereby giving PMI ownership of the technology.

68.     PMI disclosed its proprietary new window technology to Hardie through disclosure of PMI's patent applications.  The disclosed PMI patent applications identified Beranek as an inventor.

69.     Hardie converted PMI's proprietary new window technology for Hardie's own private use and economic advantage.  Hardie filed three patent applications on the new window technology identifying only Emanuel as the inventor and Hardie as the sole assignee/owner. Hardie prosecuted the three patent applications which issued as the '011, '017 and '694 Patents which list only Emanuel as the inventor and Hardie as the sole assignee/owner.

70.     Hardie's actions constitute an intentional exercise of control over property belonging to PMI.

71.     PMI has therefore been substantially and irreparably harmed as a result of Hardie's conversion in an amount to be proven at trial.

## COUNT V
## UNJUST ENRICHMENT

72.     PMI incorporates by reference paragraphs 1-71 as if fully set forth herein.

73.     A benefit was knowingly received or obtained by Hardie through its filing and prosecution of the three patent applications that identify Emanuel as the sole inventor and Hardie as the sole owner without identifying Beranek as the sole inventor and PMI as the sole owner of the applications that became the '017 and '694 Patents and without identifying Beranek as a co-inventor and PMI as co-owner of the application that became the '011 Patent.

74.     The benefits received or obtained by Hardie included the right to exclude others, including PMI, from practicing, licensing, and selling the inventions of the '017, '694 and '011 Patents.  The benefits received or obtained also included preventing PMI from obtaining issuance of its patents (which it had filed prior to Hardie's applications).

75.     The benefits received or obtained by Hardie were received or obtained at the expense of PMI and Hardie did not pay PMI for the inventions.

76.     The benefits were received or obtained by Hardie under circumstances that make it unjust or inequitable for Hardie to retain such benefits without paying PMI for them.

77.     Hardie's actions constitute unjust enrichment and have damaged PMI in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing allegations and claims, Plaintiff, Proformance Manufacturing Inc., prays that the Court award it the following relief:

A.      A judgment that Beranek is the sole inventor of the '017 and '694 Patents pursuant to 35 U.S.C. § 256, requiring the Director of the U.S. Patent and Trademark Office, and Hardie, to correct the inventorship by removing Emanuel as an inventor and replacing him with

Beranek as the sole inventor and removing James Hardie Technology Limited as the assignee and replacing it with Proformance Manufacture, Inc. as the only assignee;

B.      A judgment that Beranek is a joint inventor of the '011 Patent pursuant to 35 U.S.C. § 256, requiring the Director of the U.S. Patent and Trademark Office, and Hardie, to correct the inventorship by adding Beranek as a joint inventor and adding Proformance Manufacturing, Inc. as an assignee;

C.      A judgment declaring that PMI is the sole owner of the '017 and '694 Patents and a co-owner of the '011 Patent;

D.      A judgment declaring that Hardie has no ownership interest in the '017 and '694 Patents.

E.      An award of compensatory damages, in an amount to be determined at trial, to compensate Proformance Manufacturing, Inc. for the fraudulent non-disclosure, conversion and unjust enrichment that has occurred;

F.      An award of exemplary damages, in an amount to be determined at trial, to compensate Proformance Manufacturing, Inc. for the fraudulent non-disclosure, conversion and unjust enrichment that has occurred;

G.      An award of punitive damages in an amount to be determined at trial;

H.      A judgment declaring that this case is exceptional under 35 U.S.C. § 285;

I.      An award of reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285; and

J.      Such further relief as this Court may deem necessary, just, and proper.

**MERCHANT & GOULD P.C.**

Dated: July 30, 2014                    By: s/ Shane A. Brunner
                                            Shane A. Brunner, Esq.

10 East Doty St., Suite 600
Madison, WI 53703
Telephone: (608) 280-6753

Anthony R. Zeuli, Esq.
Thomas R. Johnson, Esq.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone: (612) 332-5300

*Attorneys for Plaintiff*
*Proformance Manufacturing, Inc.*